UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                :

PATRICK WOLDANSKI, Individually and     :
on behalf of all others similarly situated,     :     **ORDER AND OPINION**
                                                :     **GRANTING MOTION TO**
                          Plaintiff,     :     **TRANSFER VENUE**
            -against-                   :
                                                :     22 Civ. 9625 (AKH)

TUSIMPLE HOLDINGS, INC.; CHENG LU;     :
PATRICK DILLON; ERIC TAPIA; XIAODI     :
HOU; MO CHEN; JAMES MULLEN;     :
MORGAN STANLEY & CO. LLC;     :
CITIGROUP GLOBAL MARKETS INC.;     :
J.P. MORGAN SECURITIES LLC; BOFA     :
SECURITIES, INC.; CREDIT SUISSE     :
SECURITIES (USA) LLC; COWEN AND     :
COMPANY, LLC; NOMURA SECURITIES     :
INTERNATIONAL, INC.; RBC CAPITAL     :
MARKETS, LLC; NEEDHAM &     :
COMPANY LLC; OPPENHEIMER & CO.     :
INC.; PIPER SANDLER & CO.; ROBERT     :
W. BAIRD & CO. INCORPORATED; and     :
VALUABLE CAPITAL LIMITED,     :
                                                  :
                               Defendants.     :
                                                  :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

                 Plaintiff commenced this federal securities putative class action in November,

2022, alleging violations of the federal securities laws under the Securities Act of 1933 (the

"Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act").

(ECF No. 1).  Plaintiff seeks compensatory damages on behalf of all persons who: (a) purchased

or otherwise acquired Defendant TuSimple securities pursuant and/or traceable to the

Registration Statement and Prospectus (collectively, the "Registration Statement") issued in

connection with TuSimple's April 15, 2021, initial public offering ("IPO"); and/or (b) that

purchased or otherwise acquired TuSimple securities between April 15, 2021, and October 31, 2022, both dates inclusive (the "Class Period").

On December 9, 2022, Defendants TuSimple Holdings, Inc. ("TuSimple" or the "Company"), Cheng Lu, Patrick Dillon, Eric Tapia, Xiaodi Hou, and James Mullen moved to transfer venue to the Southern District of California. (ECF No. 9). For the reasons provided below, I grant that motion and transfer this case to the Southern District of California.

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought." *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 134 (2013). Decisions to transfer lie within the discretion of the Court and are determined on a case-by-case analysis of convenience and fairness to the parties. *Boehner v. Heise*, 410 F. Supp. 2d 228, 241 (S.D.N.Y. 2006).

In exercising their discretion to transfer a case under § 1404, district courts give due deference to the plaintiff's choice of venue. *Steinberg & Lyman*, 690 F. Supp. at 266 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, courts give less deference to a plaintiff's choice of forum if plaintiff is not a resident in the forum. The burden of demonstrating the desirability of transfer lies with the moving party, who must show by "clear and convincing evidence" that transfer is appropriate and that the balance of convenience favors transfer. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir 2010).

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a).  *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) (citing *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013)).  First, the Court determines whether the action could have been brought in the transferee district.  Second, the Court considers "whether transfer would be an appropriate exercise of the Court's discretion."  *Everlast*, 928 F. Supp. 2d at 743 (citation omitted).

In assessing whether transfer is an appropriate exercise of discretion, courts balance various factors including: (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice. *See Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 431 (S.D.N.Y. 2018); *Fellus v. Sterne, Agee & Leach, Inc.* 783 F.Supp.2d 612, 618 (S.D.N.Y. 2011).

## II. Analysis

### A.

Applying the first step of the inquiry, I find that the suit could have been brought in the Southern District of California because it is an appropriate venue for the matter and has personal jurisdiction over the Defendants.  Plaintiffs do not contest this.

First, the Southern District of California is a proper venue within the meaning of the federal securities laws because TuSimple's headquarters is in San Diego, California, three of the Individual Defendants are California residents, and all of the challenged statements were

issued there. 15 U.S.C. § 78aa(a) ((venue for Exchange Act claims is proper in "the district

wherein any act or transaction constituting the violation occurred."). *See also SEC v. Hill Int'l,*

*Inc.*, 2020 WL 2029591, at *3 (S.D.N.Y. Apr. 28, 2020) ("[W]here venue is proper for one

defendant pursuant to the Exchange Act, venue is proper for all.") (internal quotation marks

omitted).

        Second, the Southern District of California has personal jurisdiction over all

Defendants. It has personal jurisdiction over TuSimple because the company's headquarters are

there. It has personal jurisdiction over the Individual Defendants Dillion, Tapia, and Hou

because they are residents of California. It has personal jurisdiction over the Defendants who are

not California residents—including the two other Individual Defendants Lu and Mullen, as well

as the Underwriter Defendants[1]—because, those Defendants have minimum contacts with the

United States as a whole and asserting jurisdiction would be consistent with fair play and

substantial justice. *DoubleLine Capital LP v. Construtora Norberto Odebrecht, S.A.*, 413 F.

Supp. 3d 187, 217 (S.D.N.Y. 2019) ("Because the Exchange Act authorizes worldwide service of

process, the relevant contacts for purposes of the 'minimum contacts' analysis are those with the

United States as a whole.") (internal quotation marks omitted); *see* 15 U.S.C. §§ 77v, 78aa.

Defendants Lu and Mullen either live elsewhere in the United States or are alleged to have made

or approved statements by a U.S. company based in California. The Underwriter Defendants are

all located predominantly in the United States. Furthermore, the information the Underwriter

Defendants used when preparing allegedly misleading disclosures in connection with the

---

[1] The Underwriter Defendants are Morgan Stanley & Co. LLC; Citigroup Global Markets Inc.; J.P. Morgan
Securities LLC; BofA Securities, Inc.; Credit Suisse Securities (USA) LLC; Cowen and Company, LLC; Nomura
Securities International, Inc.; RBC Capital Markets, LLC; Needham & Company, LLC; Oppenheimer & Co., Inc.;
Piper Sandler & Co.; Robert W. Baird & Co. Incorporated; and Valuable Capital Limited.

Company's IPO was all generated in California and sent to the Underwriter Defendants from California.

### B.

Having determined that the suit could have been brought in the Southern District of California, I now turn to the second step of the inquiry and consider whether transfer would be an appropriate exercise of the Court's discretion. I find that it would be.

To make this determination I must consider whether the factors of convenience weigh in favor of transferring venue to the Southern District of California or allowing it to remain in the Southern District of New York. I analyze these factors in order of their relevance to the case at hand.

#### *Interests of Justice and Trial Efficiency*

The interests of justice and considerations of trial efficiency favor transfer to the Southern District of California.

S.D. Cal. is already the site of a federal securities class action in which the named plaintiff also asserts claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against virtually the same named defendants as this action. *See Dicker v. TuSimple Holdings, Inc.*, No. 3:22-cv-01300-LL-MSB (S.D. Cal.) ("California Federal Action"). The California Federal Action was filed nearly three months before the suit at hand. Like the complaint in the instant suit, the complaint in the California Federal Action also alleges that the named defendants made or authorized false or misleading statements in connection with TuSimple's IPO and in documents filed with the SEC following the IPO. Furthermore, the class members and periods in the two suits are nearly identical, the only difference being that the instant suit extends the Class Period by three months.

5

The California Federal Action was brought on behalf of persons who purchased or otherwise acquired TuSimple stock (i) in connection with the April 15, 2021, IPO and/or (ii) between April 15, 2021 and August 1, 2022. *Dicker*, No. 3:22-cv-01300-LL-MSB, ECF No. 1. The instant suit extends that Class Period until October 31, 2022. (ECF No. 1).

Plaintiff is correct to note that the instant suit is not identical to the California Federal Action. (ECF No. 17). Nonetheless, the instant action and the California Federal Action are related to such a significant degree that transfer to S.D. Cal. would advance both the interests of justice and efficiency. *See, e.g.*, *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at \*8-9 (S.D.N.Y. Sept. 18, 2008); *Capital Venture Int'l v. Network Com., Inc.*, 2002 WL 417246, at \*2-3 (S.D.N.Y. March 15, 2002). *See also Cain v. Twitter, Inc.*, 2017 WL 1489220, at \*3 (S.D.N.Y. Apr. 15, 2017) (noting that "[t]he interests of justice require that the cases be related, not identical."). Transfer would allow Defendants to move to consolidate the instant action with the California Federal Action, which would save judicial resources and avoid unnecessary conflicts between the cases. Indeed, consolidation has been granted in cases with far fewer similarities than the instant case has to the California Federal Action. *See e.g. Hardy v. MabVax Therapeutics Holdings*, 2018 WL 4252345, at \*2 (S.D. Cal. Sept. 6, 2018) (allowing consolidation of putative securities class actions despite differences in putative class and Class Period). But even if a motion for consolidation were unsuccessful, transfer would make it more efficient to coordinate discovery efforts in this and the California Federal Action.

### *Locus of Operative Facts*

S.D. Cal is the locus of operative facts of this case. First, it is the location of the Defendant's headquarters, something which strongly suggests that S.D. Cal is the locus of operative facts. *See e.g. City of Miami Firefighters' & Police Officers' Ret. Tr. v. CVS Health*

6

*Corp.*, 2019 WL 13217378, at \*2 (S.D.N.Y. Aug. 9, 2019); *In re Anadarko Petroleum Corp.*, 2012 WL 12894796, at \*9 (S.D.N.Y. Mar. 19, 2012) (finding a defendant company's corporate headquarters to be the locus of operative facts).

Second, all the statements Plaintiff is challenging, as well as the documents related to those statements, were issued from S.D. Cal, and in securities fraud actions "[m]isrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." *See, e.g., Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at \*6 (S.D.N.Y. June 17, 2015) (citation and internal quotation marks omitted).

### *Location of Relevant Documents, Relative Ease of Access to Proof, Convenience for Witnesses and the Parties*

S.D. Cal. is where most relevant documents are likely located, where it will be easiest to access proof, and where, on the whole, it will be most convenient for the litigation to proceed for both witnesses and the Parties.

First, because S.D.Cal. is the locus of operative facts, and where the challenged statements and supporting documents were issued, S.D. Cal. is the likely location of the majority of the documents relevant to this case. Plaintiff's argument that transfer should be denied because his claim centers on an allegation that Defendant unlawfully transferred its intellectual property to the company, Hydron, in China is not convincing. By Plaintiff's own admission, Hydron is "headquartered in California," (ECF No. 20 at \*9), and there is no factual basis for me to conclude that more relevant documents are located in China than in California. Furthermore, given that Hydron is headquartered in California, it would be more logical and effective for a court based in California to issue and enforce third-party subpoenas on Hydron, than it would be for a court based in New York to do so.

7

Second, the key witnesses in this case will likely be company officers and employees responsible for TuSimple's public statements, including employees who prepared for the IPO, and who drafted and signed the registration statement. The majority of these individuals are based in California, and none of the Individual Defendants live in New York. This suggests not only that it will be relatively easier to gain access to proof in S.D. Cal. than in S.D.N.Y., but also that S.D.Cal will be the most convenient location for the majority of the witnesses likely to be involved in this case.

Third, S.D.Cal. would be a more convenient forum for the Parties. TuSimple and multiple named Defendants are based in California, and no Individual Defendant is based in New York. Even if the Underwriter Defendants are mostly located in New York—a fact which the Parties' dispute—transfer to S.D. Cal. is still more convenient on the whole because that is where the Defendant-issuer is located, and where the majority of Individual Defendants reside. *See e.g. Steck v. Santander Consumer USA Holdings Inc*., 2015 WL 3767445, at *6-9 (S.D.N.Y. June 17, 2015) (transferring securities class action to a Nevada District where defendant-company was located even though the principal offices of defendant underwriters was in New York). Lastly, it will not be substantially more difficult for Plaintiff, a resident of Michigan, to litigate in S.D.Cal than in S.D.N.Y.

### *Plaintiff's Choice of Forum*

While Plaintiff's choice of forum deserves due consideration, I give Plaintiff's choice relatively less deference because Plaintiff is a resident of Michigan, not of New York. *See e.g. SEC v. American Renal Assoc. Holdings, 2022 WL 1166087*, at *4 (S.D.N.Y. Apr. 20, 2022) ("plaintiff's choice of venue is given less deference where … the plaintiff's residence is not the chosen forum"). Plaintiff's interest in proceeding in New York rather than California is

8

also diminished because he purports to bring this case on behalf of a putative nationwide class. *See e.g. See Pace v. Quintanilla*, 2013 WL 5405563, at *5 (S.D.N.Y. Sept. 23, 2013). As such, Plaintiff's choice of forum does not weigh strongly against transfer.

### *The Comparative Familiarity of Each District with the Governing Law and the Relative Means of the Parties.*

Consideration of the comparative familiarity of S.D. Cal. and S.D.N.Y with the governing law and the relative means of the parties do not weigh against transfer. First, the "forums' familiarity with the federal securities laws … is neutral." *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *4 (S.D.N.Y. Nov. 7, 2022) (Hellerstein, J.).

Second, Plaintiff is represented by a top-tier firm that would be paid only if Plaintiff is successful. As such, consideration of Plaintiff's means is also a neutral factor. *See In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 1010039, at *6 (S.D.N.Y. Apr. 13, 2009). *See also https://rosenlegal.com/about/* (last visited Feb. 3, 2023) (stating that The Rosen Law Firm operates on a "fully contingent fee basis"); *Rosen Law Firm Ranked No. 2 In Number Of 2021 Securities Class Action Settlements By ISS*, ROSEN LEGAL (March 7, 2022), https://rosenlegal.com/news/rosen-law-firm-ranked-no-2-in-number-of-2021-securities-class-action-settlements-by-iss/) (stating that The Rosen Firm ranked "among the top plaintiffs' firms for total settlement funds recovered in 2021.").

## CONCLUSION

In sum, because the relevant factors favor transfer or are otherwise neutral, Defendant has made a clear and convincing showing that transfer to the Southern District of California would be convenient for the witnesses and parties and in the interest of justice. Accordingly, the motion to transfer venue is granted. I leave determination as to the appointment of the lead counsel to the transferee forum. The Clerk of Court shall terminate

Defendant's motion (ECF No. 8) and all pending motions, leaving them to the transferee court to decide.

SO ORDERED.

Dated:     February 7, 2023
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

10